WAYNE CANALE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Canale v. Commissioner
Docket No. 8708-88
United States Tax Court
T.C. Memo 1989-619; 1989 Tax Ct. Memo LEXIS 619; 58 T.C.M. (CCH) 694; T.C.M. (RIA) 89619; November 15, 1989; As corrected November 27, 1989 Jay Fetman, for the petitioner. Jonathan P. Decator, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a $ 3,536 deficiency in petitioner's Federal income tax for the taxable year 1985. After respondent's concessions, the only issue is whether petitioner engaged in his motorcycle racing activities for profit within the meaning of section 183. [1]
*620 FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner was a resident of Naperville, Illinois when he filed his petition. Petitioner has been a motorcycle mechanic for 13 or 14 years. His job is seasonal, with little work in the winter. During 1985 his wages were $ 49,410.19. About 12 years ago some of his friends who were motorcycle racers said he should try motorcycle racing because with his talent for riding there was the possibility he could make some money. However, they also told him that it would be a few years before he could get up to the professional level where the purses were attractive. Petitioner felt his skills as a mechanic would enable him to bring a motorcycle up to the point where it would be highly competitive. Petitioner investigated the various types of motorcycle racing, such as dirt track and moto cross. He concluded that road racing had the biggest purses. He also felt his talents were best suited to road racing. Only a member of the American Motorcycle Association (AMA), an organization for motorcycle enthusiasts, can race motorcycles *621 professionally in the United States. An AMA member must road race motorcycles for several years before earning enough points to qualify for a professional license. A rider begins at the amateur novice level, then will be promoted to the junior amateur road racer level, and then to the amateur expert level. After a year as an amateur expert, a rider will be promoted to the professional level if he has earned enough points and also has a safe track record. During his time as an amateur, petitioner spent about 20 hours per week, usually Monday through Friday, doing the modifications and maintenance necessary to bring his motorcycles up to a more competitive level. The modifications petitioner made to his motorcycles included engine modifications. These modifications were necessary because the type of motorcycle one would buy in a motorcycle shop would not allow one to race at the professional level that has the highest prize money. Petitioner raced on the weekends. His first race was in 1975. In 1976, he joined the AMA and had a fairly good racing record. In 1977, petitioner did not race at all, but instead worked on his motorcycles. In 1978, he entered 4 or 5 races at the *622 amateur novice level. After the 1979 season he had accrued enough points to move up to the junior level. In 1980, he entered between 16 and 20 junior races and won the junior national championship in formula one, which is raced on an asphalt closed circuit. In 1981, petitioner was granted professional status. There are generally between 6 and 10 professional races each year, and petitioner entered 4 of these races in 1981. In 1981, petitioner had 4 racing motorcycles, and also a van and a trailer to transport the motorcycles to the racetrack. In 1982, he entered 4 professional races and about 10 amateur races. His first professional race in 1982 was a 200-mile race at Daytona, where speeds between 160 and 180 miles per hour are attainable. Between 120 and 180 riders try to qualify for this race, and 80 actually do so. Petitioner finished 20th overall in the race. First prize in the race was around $ 15,000, and all 80 riders received a prize. Petitioner received approximately $ 1,400. In 1983, petitioner entered 5 of the 8 professional races, and finished 14th in one race. In 1984, he entered 3 races, and his performance fell short of his expectations. In 1985, he entered *623 only 2 races. One of those races was at Daytona and had a first prize of around $ 20,000. Petitioner finished 29th in this race and earned $ 260. Petitioner did not race after 1985. Motorcycle racers can make a profit from racing either by winning races and receiving purse money or by being paid by a sponsor. Sponsorships normally are received by the riders with the most promise or with the best finishes. Petitioner never acquired a sponsor, though he did write several letters seeking sponsorship. Top motorcycle riders in petitioner's professional classification can make as much as $ 2 million annually. Petitioner first claimed deductions for his motorcycle racing expenses in 1980, the year before he achieved professional status. Petitioner never opened a separate bank account for his racing activities, but instead paid for everything with cash, personal credit card, or personal checking account. The income he won went into his personal funds. Petitioner kept no contemporaneous records of his racing expenses other than a mileage log for his van. Instead, he retained all receipts and totalled them at the end of the year. Petitioner never consulted with any accounting or *624 business advisers regarding his racing activities. However, an attorney told him he should be better organized and should set up a separate checking account and, perhaps, should incorporate. Petitioner did not follow this advice. Petitioner's racing income, expenses, and net profits were: Year Income Expenses
Net profit
1980
0      $ 14,423.11
($ 14,423.11)
1981
0      15,680.12
(  15,680.12)
1982
$ 1,405
13,806.41
(  12,401.41)
1983
935
15,356.44
(  14,421.44)
1984
1,332
13,946.13
(  12,614.93)
1985
260
9,497.61
(   9,237.61)
1986
0
0
0   OPINION The sole issue is whether petitioner engaged in his motorcycle racing activities for profit. Sec. 183. If he did not, section 183(b) limits petitioner's deductions arising from his racing activities. If, however, petitioner's objective in engaging in his racing activities was to make a profit, his expenses are fully deductible under section 162. Engdahl v. Commissioner, 72 T.C. 659, 665-666 (1979). Petitioner must have entertained an actual and honest profit objective in connection with his activities. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), *625 affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Petitioner bears the burden of proof. Rule 142(a). We have often determined that automobile or motorcycle racing activities were not engaged in for profit. See, e.g., Smith v. Commissioner, T.C. Memo. 1989-198; Hill v. Commissioner, T.C. Memo. 1988-414; Kraettli v. Commissioner, T.C. Memo. 1988-413; Franz v. Commissioner, T.C. Memo. 1984-506. These cases generally involved racing activities where the purses were small and, accordingly, the taxpayers were unlikely to make a profit even if they won a number of races. By contrast, petitioner would have made a $ 10,000 profit in 1985 if he had won only the Daytona race. Accordingly, petitioner's situation is closer to that of the taxpayer in Bolt v. Commissioner, 50 T.C. 1007 (1968), who was allowed to deduct the expenses of his automobile racing activity because "there was a practical possibility that petitioner could win enough money in a year to exceed his expenses." Bolt v. Commissioner, supra at 1014. See also Plunkett v. Commissioner, T.C. Memo. 1984-170; *626 Bryson v. Commissioner, T.C. Memo. 1982-424; Demler v. Commissioner, T.C. Memo. 1966-117. Section 1.183-2(a), Income Tax Regs., states that -- In determining whether * * * [a profit] objective exists, it may be sufficient that there is a small chance of making a large profit. Thus it may be found that an investor in a wildcat oil well who incurs very substantial expenditures is in the venture for profit even though the expectation of a profit might be considered unreasonable. In addition, the history of petitioner's racing activity is consistent with a desire to make a profit. Petitioner started racing with the goal of progressing to the professional level. After learning that he could not compete on that level, he quit racing. Petitioner's actions are similar to those of anyone who decides to try to make it in a business and after incurring losses for some time abandons the business. We also note that petitioner entered races with large purses, which suggests a concern with profitability. Respondent argues that analysis of the nine nonexclusive factors set forth in section 1.183-2(b), Income Tax Regs., suggests that petitioner lacked a profit *627 objective. We think, however, the nine factors either are inapplicable to, or favor, petitioner. For example, respondent argues that petitioner did not carry on his activities in a businesslike manner because he kept no separate bank account and no accounting records. However, petitioner knew exactly what he spent and earned from his racing activities, so there was no reason for him to have a separate bank account or to maintain detailed accounting records. Respondent also argues that petitioner did not spend much time on the activity in 1985, when he participated in only two races. However, during the previous years petitioner devoted substantial time to his racing activities, and he entered a substantial number of each year's professional races. Petitioner entered fewer races in 1985 than in previous years, apparently because he was in the process of leaving racing since he had decided it was not profitable. Petitioner's decision to leave racing because of its unprofitability supports his claim that he entered racing with a profit objective. Respondent further argues that petitioner's racing activities had social and recreational aspects. However, a "business will not *628 be turned into a hobby merely because the owner finds it pleasurable * * *." Jackson v. Commissioner, 59 T.C. 312, 317 (1972). Few of us would find our jobs bearable if our work had no social or recreational aspects. We hold that petitioner entered his racing activities with a profit objective, and that he may thus deduct his racing expenses. Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩